UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 6 21 2016

DOROTA VON MAACK,

Plaintiff,

- against -

WYCKOFF HEIGHTS MEDICAL CENTER,

Defendant.

**OPINION AND ORDER**

15 Civ. 3951 (ER)

Ramos, D.J.:

*Pro se* Plaintiff Dorota Von Maack ("Plaintiff") brings this action against Wyckoff Heights Medical Center ("Defendant" or "Wyckoff"), alleging, *inter alia*, breach of a collective bargaining agreement, employment discrimination, and retaliation. Before the Court are Defendant's motion to dismiss the Complaint and Plaintiff's motion to vacate an arbitration award. For the reasons discussed below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED. Plaintiff will be given an opportunity to file an Amended Complaint.

# I. BACKGROUND[1]

## A. Plaintiff's Employment at Wyckoff

Plaintiff is a Queens, New York resident who has worked as a pharmacist for over fifteen years. Compl. at 1, 7. From November 15, 2004 to August 11, 2011, Plaintiff was employed by

---

[1] The following facts are based on the allegations in the Complaint, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [a] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with

Defendant Wyckoff Heights Medical Center, a healthcare facility located in Brooklyn. *Id.* at 1 & Ex. 6.[2]  At all relevant times during her employment, Plaintiff's supervisor was Joseph Rumore, Wyckoff's Pharmacy Director ("Director Rumore"). *Id.* at 5.  During her employment, Plaintiff was a member of a union, 1199SEIU United Healthcare Workers East ("1199"). *Id.* at 10 ¶ 4. The terms and conditions of her employment were governed by a collective bargaining agreement ("CBA") between Wyckoff and 1199. *Id.*, Ex. 4.

Plaintiff alleges that while she worked at Wyckoff, she was subjected to a number of discriminatory practices based on her race, national origin, immigration status, sex, disability, religion, and age. *Id.* at 7.  Chief among her discrimination claims in this suit is that she was treated less favorably than other employees because she is an immigrant from Poland and a naturalized, as opposed to native born, U.S. citizen. *See, e.g.*, *id.* at 7, 49–50.  Plaintiff essentially alleges that her workplace was divided between "favored" employees, like American-born pharmacists Larry Coppola and Maria Esposito, and "non-favored" employees, like herself. *Id.* at 7.

Among other discriminatory acts, Plaintiff alleges that:  she was subjected to discriminatory shift scheduling, whereby she was scheduled to work five days per week while favored pharmacists, including Coppola and Esposito, worked only four days per week, *id.* at 7 & Ex. 9; she was assigned more work than favored pharmacists and, unlike favored pharmacists, was not permitted to ask pharmacy technicians for help, *id.* at 8–9 ¶ 3; she was subjected to excessive discipline compared to favored employees, *id.* at 10–12 ¶¶ 5–6; and she was made to

---

the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[2] Defendant did not raise a venue challenge in its motion to dismiss.

perform the least desirable assignments, which included making chemotherapy and intravenous medications in a compounding room that she alleges did not meet industry safety standards, *id.* at 8 ¶ 2.  Plaintiff alleges that working in the compounding room caused her to lose weight, to frequently suffer colds, bronchitises, and pneumonias, and, later, to acquire three diseases that affect her lungs—bronchiectasis, atelectasis, and chronic obstructive pulmonary disease ("COPD").  *Id.* at 8 ¶ 2, 19–20 ¶¶ 29–31.[3]  Plaintiff also alleges that Wyckoff owes her over $30,000 in wages by the terms of the CBA.  *Id.* at 10 ¶ 4.[4]

Throughout her employment, Plaintiff complained to her supervisor, Wyckoff officials, her union, and others regarding discriminatory treatment, issues of workplace safety, and violations of the CBA.  *Id.* at 15 ¶¶ 16–18.  At some point, Defendant introduced a rotation system to address some of the issues Plaintiff raised about shift scheduling and assignments, but many of Plaintiff's concerns had still not been addressed.  *Id.* at 15 ¶ 17.  Plaintiff alleges that she and other employees became dissatisfied with the conditions at Wyckoff and with their union representation, and on June 9, 2009, Plaintiff and her fellow pharmacists at Wyckoff signed a petition, addressed to Wyckoff's then-CEO, requesting immediate negotiations for a new employment contract.  *Id.* at 16 ¶ 19 & Ex. 17.  Plaintiff delivered the petition in person.  *Id.* at 16 ¶ 19.

Plaintiff alleges that Defendant retaliated against her for her complaints, particularly after she delivered the June 9 petition.  *Id.*  One such incident occurred not long thereafter.  Plaintiff

---

[3] Plaintiff's health conditions are the subject of a workers' compensation suit Plaintiff filed on August 5, 2011. Compl. at 2 ¶ 1, 26 ¶ 46.  The Workers' Compensation Law Judge disallowed Plaintiff's claim, and the Workers' Compensation Board affirmed that determination on appeal.  *Id.* at 2 ¶ 1.  Plaintiff's appeal to the Third Department of the New York State Appellate Division is currently pending.  *Id.*

[4] Plaintiff's unpaid wages are the subject of three suits Plaintiff filed against Defendant in New York City Small Claims Court.  Compl. at 3 ¶ 3.  On November 12, 2015, after a trial, the Small Claims Court found in Plaintiff's favor, awarding her a total of $701.38.  Reply Memorandum of Law in Support of Plaintiff's Motion to Void the Arbitration Award (Doc. 22) ("Pl.'s Reply Mem."), Ex. K.

alleges that on June 13, 2009, she became so sick from her exposure in the compounding room that she had to be hospitalized. *Id.* at 16 ¶ 20. Plaintiff returned to work after four days with a discharge note from NYU Medical Center, *id.*, Ex. 18, but, according to Plaintiff, Director Rumore refused to see the note and instead accused her of going on a ski vacation. *Id.* at 16 ¶ 20. Plaintiff alleges that, in an act of retaliation, Director Rumore made her work alone in the hospital without support from other personnel. *Id.* When Plaintiff reported the incident in the pharmacy "communication book," she was given a disciplinary notice and suspended for three days. *Id.* at 16–17 ¶ 20. When she returned to work on July 21, Director Rumore ordered a security guard to escort her off the premises, allegedly to further intimidate her. *Id.* at 17 ¶ 21. Plaintiff complained about the incident to Wyckoff officials, including Wyckoff's Human Resources Director, Margaret Cornelius, and Compliance Officer, Claire Mullally, but to no avail. *Id.* at 17–18 ¶¶ 21–26. Plaintiff also filed a grievance request with her union about the incident, but the union declined to file a grievance on her behalf. *Id.* at 17 ¶ 21.

Plaintiff's health continued to worsen in 2010. *Id.* at 19–21 ¶¶ 29–36. Plaintiff claims that she informed Defendant about her health conditions and requested that she not be scheduled to work in the compounding room for multiple days in a row. *Id.* at 19 ¶ 29. Although favored employees were allegedly granted similar requests, Plaintiff's requests were denied. *Id.* According to Plaintiff, she was scheduled to work in the compounding room more frequently as a result of her requests. *Id.* at 21 ¶ 36. Plaintiff also claims that she requested medical leaves, which were denied. *Id.* at 20 ¶ 31. In late 2010, Plaintiff warned Director Rumore that if the health and safety violations in the pharmacy were not remedied, she would notify federal and state authorities. *Id.* at 20 ¶ 32.

Plaintiff's complaints persisted throughout 2011.  At a February 10, 2011 union meeting, Plaintiff and others raised a number of issues with union organizers, including complaints about scheduling and wages, and the need for upgrades to bring the compounding room up to industry standards.  *Id.* at 21–22 ¶ 37.  According to Plaintiff, the union did not file grievances on the members' behalf.  *Id.* at 22 ¶ 37.  In July, Plaintiff sent letters reiterating those complaints to Wyckoff officials, but she received no response.  *Id.* at 23–24 ¶¶ 39, 41.  Also in July, Plaintiff began the process of initiating a workers' compensation claim.  *Id.* at 24 ¶ 40.

Meanwhile, Plaintiff received more disciplinary notices, ultimately leading to her termination.  On July 5, 2011, Plaintiff received a disciplinary notice and five-day suspension stemming from an incident occurring on May 28, 2011.  *Id.* at 22 ¶ 38 & Ex. 27.  On that date, Director Rumore ordered Plaintiff and pharmacist Esposito to prepare TPN (a form of liquid nutrition).  *Id.*  Plaintiff and Esposito refused the order, since it was not accompanied by a prior official memorandum, in violation of Wyckoff's policies and procedures.  *Id.*  According to Plaintiff, Director Rumore only created the required memorandum after the fact, on June 6, 2011. *Id.*  Unlike Plaintiff, pharmacist Esposito was not disciplined for the incident.  *Id.* at 23 ¶ 38. Plaintiff maintains that she did nothing to deserve punishment, and that she only received the disciplinary notice and suspension so that Director Rumore could have a reason to later fire her. *Id.* at 22–23 ¶ 38.

The incident that led to Plaintiff's ultimate dismissal took place a few weeks later, on July 30, 2011.  That day, the pharmacy was understaffed, and Plaintiff alleges that she was too busy working to accept a package.  *Id.* at 24–25 ¶ 42.  Despite the fact that another pharmacist and a technician were present, Plaintiff was blamed for refusing the delivery and for letting the delivery driver wander the pharmacy unsupervised.  *Id.* at 24–25 ¶ 42 & Ex. 34.  Plaintiff alleges

that Director Rumore intentionally understaffed the pharmacy that day. *Id.* at 24 ¶ 42. She also claims that the technician on duty later admitted to setting Plaintiff up at the request of Director Rumore. *Id.* at 28–29 ¶ 52.

Plaintiff complained about these disciplinary incidents before she was ultimately fired. A grievance process was initiated, and a formal grievance meeting took place on August 2. *Id.* at 25 ¶ 44. Present were Director Rumore, Wyckoff Vice President Frances Heaney, Wyckoff Labor Relations Manager Joseph Foti, and two 1199 organizers. *Id.* Plaintiff alleges that three minutes into the meeting, when she began "to explain the whole situation, everybody in the room got up and left [the] room without saying one word." *Id.* at 25–26 ¶ 44.

Plaintiff also lodged a complaint against Director Rumore with Human Resources, and on August 4, 2011, she met with Labor Relations Manager Foti to discuss her allegations of harassment and unfair treatment. *Id.* at 26 ¶ 44 & Ex. 7. Plaintiff alleges that Foti ended the meeting after only a few minutes. *Id.* at 26 ¶ 44.

On August 5, Plaintiff submitted a safety and health hazard notice to the Occupational Safety and Health Administration ("OSHA") about the conditions in the compounding room. *Id.* at 27 ¶ 47.[5] The same day, she sent a letter to Wyckoff's Compliance Officer, Claire Mullally, regarding her medical condition and discrimination, *id.* at 26 ¶ 45, and her workers' compensation claim was booked with the New York State Workers' Compensation Board, *id.* at 26 ¶ 46.

---

[5] Among other things, Plaintiff's notice indicated that because the "[c]hemotherapy compounding station and intravenous medication preparation station are located in one room," the "[r]isk of cross contamination is high;" that "[t]he ventilation system in the room is old, rusty, and noisy and does not prevent employees from inhaling toxic gases;" that "[t]he bio-waste containers are not hermetic and employees are exposed to their content;" and that "[d]ust and vapors in the room agitated by ventilation make the room unsanitary." Compl., Ex. 29.

Almost one week later, on August 11, 2011, Plaintiff received a disciplinary notice for the July 30 incident and was terminated for "continu[ing] to engage in . . . disruptive behavior." *Id.* at 28 ¶ 50 & Ex. 34.  Wyckoff Vice President Frances Heaney allegedly told Plaintiff to "finish [a] chemotherapy assignment and then to go home and never come back."  *Id.* at 28 ¶ 50. Plaintiff claims that she was terminated in retaliation for filing the OSHA complaint and her workers' compensation claim.  *Id.*  Plaintiff also claims that the dismissal was done in violation of the CBA, since no union representative was present when it occurred.  *Id.*[6]

**B.  Events Following Plaintiff's Termination**

The day after she was fired, Plaintiff filed a retaliatory termination complaint with OSHA.  *Id.* at 33 ¶ 64 & Ex. 51.  Plaintiff alleges that in late August and September 2011, she sent OSHA, per its request, over 100 pages showing that Defendant had violated OSHA and retaliated against her.  *Id.* at 33 ¶ 64, 38 ¶¶ 6–7.  According to Plaintiff, OSHA did not inspect the pharmacy, *id.* at 27 ¶ 47, or provide her with any updates on its investigation, *id.* at 33 ¶ 64.[7]

Twenty days after her termination, on August 31, 2011, Plaintiff received a memorandum from Labor Relations Manager Foti regarding her complaints of harassment and unfair treatment against Director Rumore.  *Id.* at 28 ¶ 51 & Ex. 7.  Foti informed Plaintiff that an investigation had been conducted, that he had been unable to substantiate Plaintiff's claims, and that he had therefore closed the matter.  *Id.*

On January 10, 2012, Plaintiff's union advised her to file for unemployment benefits.  *Id.* at 29 ¶ 53.  Wyckoff challenged the benefits, claiming that Plaintiff was fired due to misconduct.

---

[6] Plaintiff suggests that she might still be an employee of Defendant, since she never received discharge papers. Compl. at 6, 28 ¶ 50.  Yet this supposition cannot be squared with the fact that following her termination, Plaintiff began receiving unemployment benefits.  *Id.* at 29 ¶¶ 53–54.

[7] Plaintiff indicates that she intends to file a lawsuit against OSHA.  Pl.'s Reply Mem. at 12.

*Id.* at 29 ¶ 54 & Ex. 35.  On February 8, 2012, Plaintiff and Wyckoff representatives attended a

hearing before an Administrative Law Judge ("ALJ").  *Id.* at 29 ¶ 54.  The ALJ upheld Plaintiff's

entitlement to benefits in a decision filed March 8, 2012, determining that "there is insufficient

evidence to establish that [Plaintiff] engaged in misconduct for unemployment insurance

purposes."  *Id.* at 29 ¶ 54 & Ex. 35.

Pursuant to the CBA, 1199 grieved Plaintiff's dismissal to arbitration, which took place

on April 11, 2012.  *Id.* at 29 ¶ 55.  Plaintiff alleges that 1199 breached its duty of fair

representation ("DFR") by "collu[ding]" with Wyckoff to "rig[] the arbitration" against her.  *Id.*,

Ex. 37 at 3–4, 15.  Plaintiff alleges that, among other things, her union representative told her to

remain silent, refused to use exculpatory evidence she brought with her,[8] and turned away one of

her witnesses.  *Id.*, Ex. 37 at 5.  At the hearing, the arbitrator heard testimony from Plaintiff and

from Steven Kaden, the other pharmacist on duty with Plaintiff on July 30, 2011.  *Id.*, Ex. 36 at

6–7.  On April 30, 2012, the arbitrator issued his decision, concluding that, considering Kaden's

testimony and Plaintiff's prior disciplinary history, there was just cause for Plaintiff's discharge.

*Id.*, Ex. 36.[9]

Plaintiff thereafter continued to lodge complaints with government agencies.  In June

2012, Plaintiff filed a charge against Wyckoff with the National Labor Relations Board

("NLRB").  *Id.* at 40–41 ¶ 17.  The charge was dismissed as untimely, and the dismissal was

sustained on appeal.  *Id.* at 40–42 ¶¶ 17–22; Declaration of Barbara E. Hoey, Esq. in Support of

---

[8] The arbitration award makes no mention of Plaintiff's OSHA complaint or workers' compensation claim.  Compl., Ex. 36.

[9] In light of the arbitrator's decision, Wyckoff again challenged Plaintiff's unemployment benefits.  Compl. at 31 ¶ 58.  On June 28, 2013, the Appeal Board again ruled in Plaintiff's favor, finding that Plaintiff's conduct on July 30, 2011 amounted to "an isolated instance of poor judgment" that did not warrant a denial of unemployment benefits.  *Id.*, Ex. 44 at 3.

Defendant's Motion to Dismiss the Complaint (Doc. 12) ("Hoey Decl."), Exs. M, N.[10]  On

August 7, 2013, Plaintiff filed a discrimination complaint against Wyckoff with the New York

State Division of Human Rights ("NYSDHR").  Compl. at 34 ¶ 65; Hoey Decl., Ex. S.  On

November 8, 2013, the Equal Employment Opportunity Commission ("EEOC") dismissed the

charge, after an attorney that Plaintiff retained to bring suit against Wyckoff indicated that she

wished to pursue the matter in State court.  Compl. at 34 ¶ 65 & Ex. 2A.  The same attorney also

withdrew Plaintiff's OSHA complaint for retaliatory termination so that Plaintiff could "pursue

her federal, state and city claims within the requisite statute of limitations."  *Id.* at 33 ¶ 64 & Ex.

45A.  Plaintiff alleges that her attorney closed these matters without providing her "any

explanation."  *Id.* at 33–34 ¶¶ 64–65.

### C.  Plaintiff Sues Wyckoff and 1199

On June 22, 2013, with the assistance of her attorney, Plaintiff filed a lawsuit against

Wyckoff in New York State Supreme Court.  *Id.* at 32 ¶ 62.  In that action, Plaintiff claimed only

that Wyckoff violated New York Labor Law § 741, a whistleblower law for certain healthcare

employees, by terminating her for complaining about unsafe conditions in the pharmacy.  *Id.*  On

March 13, 2014, the Court dismissed Plaintiff's complaint with prejudice.  *Von Maack v.*

*Wyckoff Heights Med. Ctr.*, 43 Misc. 3d 1206(A) (Sup. Ct., Kings Cty. Mar. 13, 2014).  The

Court held, in part, that Plaintiff could not relitigate the issue of her termination, because an

arbitrator had already determined that she was fired for just cause.  *Id.* at *11–12.[11]  Following

---

[10] The NLRB also upheld dismissal of Plaintiff's complaint against 1199, finding there to be insufficient evidence that the union breached its DFR.  Hoey Decl., Exs. O, P.

[11] The Court also held that Plaintiff was not a covered employee within the meaning of § 741, since she did not make judgments about the quality of care for the patients who were to receive the medications she prepared, 43 Misc. 3d 1206(A), at *14–15, that Plaintiff failed to specify which laws, rules, or regulations she believes Wyckoff violated, *id.* at *16, and that her allegations concerned only purported dangers to Wyckoff's employees and herself, although § 741 was meant to protect the general public or a specific patient, *id.* at *16–17.  Plaintiff's *pro se* appeal before the Second Department of the New York State Appellate Division is currently pending.  Compl. at 2 ¶ 2.

the dismissal of her case, Plaintiff attempted to reopen her NYSDHR complaint, but a division

officer informed her that she could not do so.  Compl. at 35 ¶ 69.  As a result, Plaintiff "vowed

[she] would never hire a lawyer again."  *Id.*

On June 17, 2014, Plaintiff filed a *pro se* action against 1199 in the Southern District of

New York.  As in the present action, Plaintiff alleged violations by 1199 of a host of federal

laws, but the essence of her complaint in that case was that 1199 violated its DFR by conspiring

with Wyckoff to have her terminated and by failing to properly grieve her termination.  *Von

Maack v. 1199SEIU United Healthcare Workers E.*, No. 14 Civ. 4360 (PKC), 2014 WL

5801349, at *1 (S.D.N.Y. Nov. 7, 2014).   On November 7, 2014, District Court Judge P. Kevin

Castel dismissed Plaintiff's complaint, finding, among other things, that Plaintiff failed to

plausibly allege discrimination by 1199 and that Plaintiff's other DFR claims were untimely.  *Id.*

at *4–6.  The Second Circuit Court of Appeals affirmed the decision.  *Von Maack v. 1199 SEIU

Local*, No. 14-4276, 2016 WL 190314, at *1 (2d Cir. Jan. 15, 2016).[12]

On July 30, 2014, Plaintiff filed a second discrimination complaint against Wyckoff with

the NYSDHR, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the

Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act

("ADEA").  Compl. at 36 ¶ 73; Hoey Decl., Ex. U.  The NYSDHR investigated the charges, and

on January 21, 2015, the agency issued a determination that charges related to Wyckoff's actions

during Plaintiff's employment period were time barred, and that there was no probable cause to

believe Wyckoff engaged in any discriminatory practices in the year preceding the filing of her

---

Plaintiff indicates that if the Second Department denies her whistleblower status under § 741, she plans to challenge
the decision in federal district court.  *Id.* at 3 n.1.

[12] On April 14, 2016, Plaintiff filed a *pro se* petition for a writ of certiorari with the United States Supreme Court.

charge.  Hoey Decl., Ex. V.  On February 25, 2015, the EEOC dismissed the charge, adopting

the NYSDHR's findings, and sent Plaintiff a Notice of Right to Sue.  Compl., Ex. 1.

After receiving the EEOC Notice, on May 22, 2015, Plaintiff filed the present suit.

Among other things, Plaintiff alleges that Wyckoff discriminated against her in violation of a

number of federal statutes, retaliated against her for complaining about her treatment and the

hazardous conditions in the pharmacy, and fired her unreasonably.  On September 30, 2015,

Defendant moved to dismiss the Complaint.  *See* Memorandum of Law in Support of

Defendant's Motion to Dismiss (Doc. 11) ("Def.'s Mem.").  On October 30, 2015, Plaintiff

opposed Defendant's motion and separately moved to vacate the arbitration award.  *See*

Response to Defendant's Motion to Dismiss (Doc. 15) ("Pl.'s Opp'n Mem."); Memorandum of

Law in Support of Motion to Vacate the Arbitration Award (Doc. 16) ("Pl.'s Mem.").  Defendant

opposed Plaintiff's motion.  *See* Memorandum of Law in Opposition to Plaintiff's Motion to

Vacate the Arbitration Award (Doc 19) ("Def.'s Opp'n Mem.").

## II.  LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw

all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

2014).  The Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals

of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 680.

The same standard applies to motions to dismiss *pro se* complaints.  *See Mancuso v. Hynes,* 379 F. App'x 60, 61 (2d Cir. 2010) (summary order).  The Court is also obligated to construe a *pro se* complaint liberally and to interpret a *pro se* plaintiff's claims as raising the strongest arguments that they suggest.  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue."  *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Id.* at 224 (quoting *Twombly*, 550 U.S. at 555).  A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Triestman*, 470 F.3d at 477 ("[P]*ro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## III.  DISCUSSION

Plaintiff alleges a host of claims in her 73-page Complaint.  For the reasons discussed below, all of those claims are dismissed, and Plaintiff's motion to vacate the arbitration award is

denied.  Plaintiff will, however, be granted leave to file an Amended Complaint to replead certain of her claims.

### A.  Plaintiff's Motion to Vacate the Arbitration Award is Untimely.

Plaintiff seeks to vacate the April 30, 2012 arbitration award that found her termination was for just cause.  Pl.'s Mem. at 1; *see* Compl., Ex. 36.  Plaintiff initially styled her request as Count 11 in her Complaint.  Compl. at 61–72.  After Defendant challenged the claim as procedurally defective, Def.'s Mem. at 17–18, Plaintiff filed a separate motion to vacate the award under Section 10 of the Federal Arbitration Act ("FAA").

In its opposition brief, Defendant argues that the FAA is inapplicable here, where the arbitration award was issued pursuant to a CBA.  Def.'s Opp'n Mem. at 4.  Instead, Defendant argues that Section 301 of the Labor Management Relations Act ("LMRA") applies.  *Id.* at 5.  In her reply, Plaintiff concedes the FAA is inapplicable, but for a separate reason—because the union arbitrated the termination on her behalf, Plaintiff claims she was not a "party" to the arbitration.  Pl.'s Reply Mem. at 3–4 & n.3.  As a result, Plaintiff asserts that she has abandoned her FAA claim.  *Id.* at 4 ("I am not legally capable to use the FAA in this lawsuit.  For this reason, the cause of action under the FAA can be aborted. . . . [T]here is no such cause of action any more.").  However, she still asks the Court to "void the arbitration" pursuant to her breach of contract and discrimination claims.  *Id.* at 4–7, 13–14 ("[T]he award is illegal in light of the statutes listed in my initial complaint.").  Because it is not clear from Plaintiff's papers whether she has indeed abandoned her claim, the Court will consider both parties' arguments and decide the motion.

Under either the FAA or LMRA, Plaintiff's request to vacate the arbitration award is untimely.[13]   The FAA provides that notice of a motion to vacate an arbitration award "must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. § 12.  After the three-month period has run, "a party may not raise a motion to vacate, modify or correct an arbitration award."  *Wallace v. Buttar*, 378 F.3d 182, 197 (2d Cir. 2004).  Here, Plaintiff admits that she received the April 30, 2012 arbitration award on May 10, 2012, Pl.'s Mem. at 6, but she did not seek vacatur until over three years later.  Plaintiff's request is thus untimely under the FAA.

Although Congress did not provide a statute of limitations for suits brought under Section 301 of the LMRA, courts in this Circuit have held that a plaintiff has ninety days from the receipt of a labor arbitration award to petition for vacatur.  *See, e.g.*, *Orange and Rockland Utils., Inc. v. Local 503, Int'l Brotherhood of Elec. Workers*, No. 05 Civ. 6320 (WCC), 2006 WL 1073049, at *3 (S.D.N.Y. Apr. 21, 2006).[14]   Again, Plaintiff did not seek vacatur until over three years after

---

[13] Given that Plaintiff's request is time barred, the Court need not decide whether the FAA applies here or whether Plaintiff was a "party" to the arbitration for purposes of that statute.  However, Plaintiff's suggestion that the award is unenforceable, Pl.'s Reply Mem. at 4 n.5, is incorrect—the CBA itself provides that an arbitrator's award "shall be final, conclusive and binding upon the Employer, the Union and the Employees," Compl., Ex. 4 at 94.  *See also Von Maack v. Wyckoff Heights Med. Ctr.*, 43 Misc. 3d 1206(A), at *11 ("[W]hen a union arbitrates on behalf of a grievant, the union acts as the agent of that grievant, and the grievant is bound by all claims decided at the arbitration.  Here, it is undisputed that the Union represented plaintiff at the arbitration hearing . . . .") (citations omitted).

[14] Courts determine the timeliness of a Section 301 suit by looking to the most appropriate state statute of limitations.  *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990).  The Second Circuit has held that CPLR 7511(a), which provides the grounds for vacating an arbitration award under New York law, provides the most appropriate limitations period for challenging an arbitration award under Section 301 in New York.  *Id.* at 612–13; *see also Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (same).  CPLR 7511(a) provides that "[a]n application to vacate or modify an award may be made by a party within ninety days after its delivery to him."

Plaintiff argues that instead of CPLR 7511(a), the Court should look to the four-year limitations period for claims under 42 U.S.C. § 1981, or the six-year limitations period for breach of contract claims in New York, because she alleges those claims in her Complaint and characterizes them as "the nucleus" of her action and "dominant" over her other claims.  Pl.'s Mem. at 8–11; Pl.'s Reply Mem. at 4–5, 8.  But Plaintiff cites no authority that supports departing from precedent in this Circuit applying CPLR 7511(a)'s ninety-day period to requests like Plaintiff's.

receiving her arbitration award.  Pl.'s Mem. at 6.  Plaintiff's request is thus untimely under the LMRA.

In her reply brief, Plaintiff asks the Court to vacate the arbitration award under contract law or federal discrimination law.  Pl.'s Reply Mem. at 5.  But Plaintiff has not provided—and the Court is not aware of—any cognizable basis for challenging a labor arbitration award outside the FAA or LMRA.  Accordingly, the Court denies Plaintiff's motion to vacate the award.

### B.  Most of Plaintiff's Claims Are Also Untimely.

#### 1.  Breach of Contract and LMRA Claims

Plaintiff alleges that Defendant breached various provisions of the CBA, including by firing her without just cause.  Compl. at 6, 48–49.  Plaintiff also alleges that her termination violated the LMRA, because it was without just cause and because her union breached its duty to fairly represent her interests under the CBA.  *Id.* at 57–58.

Section 301 of the LMRA provides, in pertinent part, that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties."  29 U.S.C. § 185(a).  The Supreme Court has held that this provision completely preempts "any state cause of action" for such violations.  *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983), *superseded by statute on other grounds*, 28 U.S.C. § 1441(e); *see also Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62 (2d Cir. 2010) ("Breach of contract claims founded directly on rights created by collective-bargaining agreements, or substantially dependent upon analysis of the terms of [such] agreement[s], are completely preempted by Section 301 of the Labor Management Relations Act.") (citations and internal quotation marks omitted).  Here, because Plaintiff's breach of contract claim is founded directly on rights created by the CBA, Section 301 preempts the claim.

*Avedian*, 387 F. App'x at 62; *see also Romero v. DHL Express, Inc.*, No. 12 Civ. 1942 (VEC) (RLE), 2015 WL 1315191, at *6 (S.D.N.Y. Mar. 24, 2015) (finding plaintiff's breach of contract claim preempted by Section 301, where the claim was premised on defendant creating a hostile work environment and subjecting plaintiff to discrimination, retaliation, and wrongful termination in violation of the terms of a CBA).[15]

Plaintiff's breach of contract claim "must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (citation omitted). Defendant argues that treating Plaintiff's breach of contract claim as a claim under Section 301 would be futile, since such a claim would be time barred. Def.'s Mem. at 9 n.8. The Court agrees.

Plaintiff alleges not only that Defendant breached the CBA, but also that her union breached its DFR by failing to properly grieve her complaints and termination. Compl. at 57–58. Her LMRA claim is thus not a straightforward breach of contract claim under Section 301, but a "hybrid" Section 301/fair representation claim. *Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000); *see also* Compl. at 5 n.4 (explaining that the LMRA permits her "hybrid" claim). Such a claim must have been brought within six months of the time Plaintiff knew or should have known of 1199's breach. *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 46 (2d Cir. 2014) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169 (1983)) (borrowing the limitations

---

[15] Section 301 does not preempt "every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). The preemptive effect of Section 301 extends only to "claims founded directly on rights created by collective-bargaining agreements" and claims "substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). Thus, although the CBA itself prohibits discrimination by Wyckoff against its employees, *see* Compl., Ex. 4 at 13–14, Section 301 does not preempt Plaintiff's discrimination claims premised on federal law. *See Chopra v. Display Producers, Inc.*, 980 F. Supp. 714, 719 (S.D.N.Y. 1997). As discussed *infra*, however, the Court dismisses those claims for other reasons.

period for filing such a claim from Section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b)); *see also Gerena v. 10 Sheridan Assocs. LLC*, No. 13 Civ. 6056 (CM), 2013 WL 5880567, at \*6 (S.D.N.Y. Nov. 1, 2013) (same).  In this case, 1199's most recent alleged breach occurred at the arbitration hearing.  *See* Compl., Ex. 37.  Plaintiff thus had six months from April 30, 2012, the date of the arbitration award, to bring her LMRA claim.  *Kalyanaram*, 742 F.3d at 46–47.  Her failure to timely do so mandates dismissal of her LMRA claim, and renders futile the conversion of her breach of contract claim to one under the LMRA.  *See Von Maack v. 1199SEIU United Healthcare Workers E.*, 2014 WL 5801349, at \*6 (dismissing Plaintiff's freestanding DFR claim against 1199 as time barred).

Plaintiff argues that her suit is not a "typical hybrid action" because she sued Wyckoff and 1199 in separate actions.  Pl.'s Opp'n Mem. at 6.  But Plaintiff "cannot circumvent the six-month limitations period for hybrid actions by choosing to sue only [her] employer."  *Carrion*, 227 F.3d at 34 (quoting *McKee v. Transco Prods., Inc.*, 874 F.2d 83, 86 (2d Cir. 1989)).  "The law is clear that regardless of who is named as a defendant, a hybrid claim is presented if an employee has a cause of action against both the employer and the union, where the two claims are inextricably linked, and where the case to be proved is the same against both."  *Id.* (quoting *McKee*, 874 F.2d at 86).

Plaintiff also alleges that the six-month statute of limitations should not apply to her LMRA claim because of the longer limitations periods that apply to her discrimination claims.  Pl.'s Opp'n Mem. at 5–6.  Regardless of whether Plaintiff's claims all stem from the same universe of facts, however, each must be timely in its own right.  *See Ganny v. F.J.C. Sec. Servs., Inc.*, No. 15 Civ. 1965 (JG) (JO), 2015 WL 4600745, at \*6 n.8 ("The Title VII and New York

Human Rights Law claims are independent of the 'hybrid' claim and, thus, are not subject to its six-month statute of limitations.").

Even if Plaintiff's LMRA claim were not time barred, the claim would still warrant dismissal on the merits as futile.  To establish a hybrid Section 301/DFR claim, Plaintiff must prove both that Wyckoff breached the CBA and that 1199 breached its DFR.  *DelCostello*, 462 U.S. at 165.  In light of Judge Castel's decision dismissing Plaintiff's freestanding DFR claim against 1199, *Von Maack v. 1199SEIU United Healthcare Workers E.*, 2014 WL 5801349, at *4–6, Plaintiff's hybrid claim in this action is doomed.  *See Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995) ("[T]he doctrine of issue preclusion . . . applies if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.").

Because Plaintiff will be unable to cure the deficiencies in her breach of contract and LMRA claims, these claims are dismissed with prejudice.

## 2.  Title VII, ADA, and ADEA Claims

Plaintiff claims that Defendant discriminated against her, and retaliated against her for complaining of such discrimination, in violation of Title VII.  Compl. at 53–54.  Plaintiff also alleges that Defendant violated the ADA by refusing her requests for an accommodation for her lung diseases.  *Id.* at 54–55.  Plaintiff's ADEA claim is not clearly presented, but she seems to allege that Defendant fired her so that she would be unable to reach retirement age and thus receive retirement benefits.  *Id.* at 58.

In order to bring a claim under Title VII, the ADA, or the ADEA, a plaintiff must first exhaust her administrative remedies with the EEOC or the equivalent state-level agency, in this case the NYSDHR.  *See Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 462, 467 (S.D.N.Y.

2005) (Title VII); *Torrico v. Int'l Bus. Machs. Corp.*, 319 F. Supp. 2d 390, 400–01 (S.D.N.Y. 2004) (ADA); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562–63 (2d Cir. 2006) (ADEA), *aff'd*, 552 U.S. 389 (2008).  Before a plaintiff may file a federal suit under one of these statutes: (1) the claim forming the basis of the suit must first be raised in the plaintiff's charge with the EEOC or the equivalent state agency, and (2) the charge must be filed with the EEOC within 180 days of the allegedly unlawful act, or with the equivalent state agency within 300 days.  *See Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006).  For Title VII and ADA claims, the plaintiff must additionally receive a Notice of Right to Sue from the EEOC before bringing suit.  *Id.*  ADEA plaintiffs, on the other hand, do not need to first obtain a Notice of Right to Sue, but rather need only wait sixty days after filing the EEOC or NYSDHR charge before bringing suit.  *Holowecki*, 440 F.3d at 563 (quoting *Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d 164, 166 (2d Cir. 1998)).  Failure to exhaust these administrative remedies constitutes a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Williams*, 458 F.3d at 70.

Plaintiff filed two complaints against Wyckoff with the NYSDHR, the first on August 7, 2013 and the second on July 30, 2014.  Compl. at 34 ¶ 65, 36 ¶ 73; Hoey Decl., Exs. S, U.  Plaintiff concedes that she cannot rely on the first charge to support exhaustion of her present claims, in part because it was premised on a different legal theory, but she argues that because the EEOC issued her a Notice of Right to Sue on the second charge,[16] and because she filed the

---

[16] Plaintiff seems to be under the misimpression that the EEOC found her claims to have merit.  *See* Compl. at 53; Pl.'s Opp'n Mem. at 16.  In fact, the EEOC adopted the findings of the NYSDHR, which concluded that they did not.  Compl., Ex. 1 (EEOC Notice) ("The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge."); Hoey Decl., Ex. V (NYSDHR Decision) ("Complainant has failed to establish a prima facie complaint of retaliation and age, national origin and disability discrimination in that she has not shown that she was subjected to any adverse employment action by respondent during the one year period that preceded her filing of the instant complaint.  To the extent that complainant raises allegations regarding her termination and adverse actions that allegedly took place while she was employed by respondent, such allegations are barred by the one year statute of limitations.  For these reasons, the record does not support a determination of probable cause in this case.").

instant suit within ninety days of receiving the Notice, her Title VII, ADA, and ADEA claims are still viable. Pl.'s Opp'n Mem. at 16–17. Plaintiff's allegations of discrimination in the present suit all relate to events taking place while she was employed by Defendant. Plaintiff thus had 300 days from the day she was terminated to file charges with the NYSDHR. However, she waited almost two years to file her first charge and three years to file her second; accordingly, neither charge was timely filed. *See Rogers v. Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT), 2016 WL 889590, at *4 (S.D.N.Y. Feb. 26, 2016) ("[D]iscrete acts of discrimination that occurred before . . . 300 days prior to the filing date[] are not actionable."). Plaintiff's Title VII, ADA, and ADEA claims are thus dismissed with prejudice.

### 3. EPA Claim

The Equal Pay Act ("EPA") provides for a two-year statute of limitations for standard violations and a three-year statute of limitations for willful violations. *See Barrett v. Forest Labs., Inc.*, No. 12 Civ. 5224 (RA), 2015 WL 4111827, at *2 (S.D.N.Y. July 8, 2015). Like Plaintiff's discrimination claims, Plaintiff's EPA claim arises from events taking place while Plaintiff was employed by Defendant—an employment period that ended on August 11, 2011. Regardless of whether the two- or three-year statute of limitations applies, Plaintiff's EPA claim is thus time barred.

Even if her EPA claim were timely, Plaintiff fails to adequately allege such a claim. The EPA prohibits an employer from "paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). Plaintiff alleges that pharmacist Larry Coppola made more money than her, although he had "lesser seniority" and "lesser

education" than she did.  Compl. at 56–57.[17]  The Complaint is devoid of any allegations going
to whether Plaintiff and Coppola performed a "substantially similar" job, however, *Barrett v.
Forest Labs., Inc.*, 39 F. Supp. 3d 407, 452 (S.D.N.Y. 2014), and Plaintiff fails to allege that she
and Coppola performed under "similar working conditions."[18]  Accordingly, Plaintiff's EPA
claim would be subject to dismissal if not time barred.

### 4. FLSA Claim

Plaintiff's claim under the Fair Labor Standards Act ("FLSA") is deficient in three
distinct ways.  First, the issue of Plaintiff's unpaid wages has already been presented to and
decided by the New York City Small Claims Court.  Pl.'s Reply Mem., Ex. K.  Plaintiff is thus
precluded from relitigating that issue here.  *See Colon*, 58 F.3d at 869.

Second, like the EPA, the FLSA provides for a two-year statute of limitations for
standard violations and a three-year statute of limitations for willful violations.  *See Herman v.
RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999).  Plaintiff's FLSA claim also arises from
events taking place while Plaintiff was employed by Defendant.  Regardless of whether the two-
or three-year statute of limitations applies, Plaintiff's FLSA claim is thus time barred.

Finally, even if Plaintiff's FLSA claim were timely, the claim is deficient as alleged.
Plaintiff alleges that Defendant's discriminatory actions caused pay inequities that manifested in
FLSA violations, Compl. at 56, but Plaintiff does not specify which provision of the FLSA was
violated.  Instead, Plaintiff simply alleges that Defendant owes her $30,000 in unpaid wages.
This conclusory allegation alone is insufficient to survive dismissal.

---

[17] Plaintiff also alleges that her *union* violated the EPA by distributing benefits unequally.  Compl. at 56–57.  But
Plaintiff's union is neither a defendant in this action nor an employer for purposes of the EPA.

[18] It is not apparent that because Plaintiff and Coppola are both pharmacists, they performed substantially similar
work under similar conditions.  For example, a shift schedule attached to the Complaint indicates that while Plaintiff
alternated working days (7:00 a.m. to 5:10 p.m.) and evenings (11:50 a.m. to 10:00 p.m.), Coppola worked the night
shift (8:15 p.m. to 7:30 a.m.).  Compl., Ex. 9.

Accordingly, Plaintiff's FLSA claim is dismissed with prejudice.

### 5. FMLA Claim

Plaintiff alleges that she was unfairly denied requests for medical leave, in violation of the Family and Medical Leave Act ("FMLA").  Compl. at 57.  Specifically, Plaintiff alleges that in 2010, she informed Director Rumore about her lung disease and asked him not to schedule her in the compounding room for a few days in a row, but her request was denied.  *Id.* at 19 ¶ 29. Plaintiff also alleges that in June 2010, she requested a leave of absence for health reasons, which was denied.  Compl. at 20 ¶ 31.  In October 2010, she submitted a written request for leave, but Plaintiff claims that Director Rumore "threw the note in [her] face."  *Id.*  Plaintiff claims she was frightened to submit another request for medical leave after that incident.  *Id.*

The FMLA also provides for a two-year statute of limitations for standard violations and a three-year statute of limitations for willful violations.  *See Richards v. N.Y.C. Dep't of Educ.*, No. 13 Civ. 16 (VEC), 2015 WL 4164746, at *13 (S.D.N.Y. July 10, 2015).  Plaintiff's FMLA claim arises from events taking place in 2010, well over four years before Plaintiff filed this action.  Regardless of whether the two- or three-year statute of limitations applies, Plaintiff's FMLA claim is time barred.  Accordingly, Plaintiff's FMLA claim is dismissed.

### 6. ERISA Claim

Plaintiff alleges that Defendant fired her unreasonably, before she reached retirement age, preventing her from obtaining full retirement benefits.  Compl. at 58.  Although she styles her claim as one under the Employee Retirement Income Security Act ("ERISA"), Plaintiff does not specify which provision of that complex statute governs her claim.  *Id.*  Considering the nature of Plaintiff's allegations, the Court, like Defendant, construes Plaintiff's ERISA claim as one under Section 510.  *See* Def.'s Mem. at 16.  That provision provides, in part, that "[i]t shall be unlawful

for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant

or beneficiary . . . for the purpose of interfering with the attainment of any right to which such

participant may become entitled." 29 U.S.C. § 1140. In this Circuit, the statute of limitations for

a Section 510 claim is two years after the date of termination. *Gabel v. Richards Spears Kibbe &*

*Orbe, LLP*, 615 F. Supp. 2d 241, 244 (S.D.N.Y. 2009) (citing *Sandberg v. KPMG Peat Marwick*

*LLP*, 111 F.3d 331, 336 (2d Cir. 1997)). Plaintiff was fired on August 11, 2011 and did not file

this suit until May 22, 2015. Plaintiff's ERISA claim is thus time barred.

Even if Plaintiff's ERISA claim were timely, Plaintiff has not plausibly alleged such a

claim. "'An essential element of plaintiff's proof under the statute is to show that an employer

was at least in part motivated by the specific intent to engage in activity prohibited by § 510.'

Therefore, a claim fails 'where the loss of pension benefits was a mere consequence of, but not a

motivating factor behind, a termination of employment.'" *Haight v. NYU Langone Med. Ctr.,*

*Inc.*, No. 13 Civ. 4993 (LGS), 2014 WL 2933190, at *16 (S.D.N.Y. June 27, 2014) (quoting

*Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1111 (2d Cir. 1988)). Here, Plaintiff alleges only in

conclusory fashion that her termination "prevented [her from] obtaining full retirement benefits."

Compl. at 58. Plaintiff's ERISA claim is therefore dismissed.

### C. Equitable Tolling is Not Appropriate Based on the Facts as Alleged.

Plaintiff submits that due to "extraordinary circumstances," the doctrine of equitable

tolling applies to her otherwise untimely motion and claims. Pl.'s Mem. at 3–8; Pl.'s Reply

Mem. at 10–13. Equitable tolling applies only in "rare and exceptional circumstance[s]." *A.Q.C.*

*ex rel. Castillo v. U.S.*, 656 F.3d 135, 144 (2d Cir. 2011) (quoting *Smith v. McGinnis*, 208 F.3d

13, 17 (2d Cir. 2000)). Plaintiff "is entitled to equitable tolling of a statute of limitations only if

[she] establishes two elements: '(1) that [she] has been pursuing [her] rights diligently, and

(2) that some extraordinary circumstance stood in [her] way and prevented timely filing.'"
*Menominee Indian Tribe of Wisc. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)); *see also Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014).  The second element of this test is met only where the circumstances causing Plaintiff's delay "are both extraordinary *and* beyond [her] control." *Menominee*, 136 S. Ct. at 756.  "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."  *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (citing *Bolarinwa v. Williams*, 593 F.3d 226, 231–32 (2d Cir. 2010), and *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008)).  It is not sufficient for Plaintiff to show that she experienced extraordinary circumstances—she "must further demonstrate that those circumstances caused [her] to miss the original filing deadline."  *Id.*

Plaintiff alleges that her attorney's "incompetence" stood in the way of her timely filing, because her attorney closed her charge with the NYSDHR and included only one State law claim in her July 22, 2013 State Court action against Defendant.  Pl.'s Reply Mem. at 11–12. "Attorney error generally does not rise to the level of an 'extraordinary circumstance.'" *Martinez v. Superintendent of E. Corr. Facility*, 806 F.3d 27, 31 (2d Cir. 2015) (quoting *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003)).  "[S]erious instances of attorney misconduct," however, may constitute "extraordinary circumstances" that warrant tolling a statute of limitations.  *Holland*, 560 U.S. at 651–52; *see also Baldayaque*, 338 F.3d at 152 ("[A]t some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary.").  Based on the facts as alleged, this Court cannot conclude that Plaintiff's attorney's conduct rises to the level of an extraordinary circumstance necessary to invoke

equitable tolling.  Plaintiff is granted leave, however, to replead such facts as may exist going to this issue in an Amended Complaint.[19]

Plaintiff's alternative arguments in support of equitable tolling, on the other hand, lack merit.  First, Plaintiff argues that her efforts to timely file were thwarted by the NLRB and OSHA—agencies to which she brought charges against Defendant—yet neither of these agencies' actions in any way hindered Plaintiff's ability to challenge the arbitration award or bring the present suit.  Charges with these agencies were not, as Plaintiff alleges, "precondition[s]" to any of her claims.  Pl.'s Mem. at 6.  And whether or not the NLRB correctly decided that Plaintiff's charge against Defendant was time barred, *id.* at 7, the agency's decision applied only to her NLRB charge, not to any of her other claims.

Next, Plaintiff argues that the NLRB and her union failed to inform her about the applicable statute of limitations.  *Id.* at 4, 8.  But Plaintiff fails to establish that these entities were under any such duty to do so, and ignorance of the law is not an "extraordinary circumstance" warranting tolling.  *See, e.g.*, *Antonmarchi v. Consol. Edison Co. of N.Y., Inc.*, 514 F. App'x 33, 37 (2d Cir. 2013) (summary order) (affirming a district court's determination that equitable tolling was not appropriate where plaintiff asserted that "he was late in filing his complaint

---

[19] Plaintiff did not retain her attorney until October 2012, Compl. at 31 ¶ 58, over a year after her termination and five months after she received the arbitrator's decision.  Thus, the limitations periods on Plaintiff's motion to vacate and her Title VII, ADA, and AEDA claims expired before any tolling due to attorney misconduct would have begun. The representation appears to have concluded in August 2014, *id.* at 35 ¶ 67–68, over eight months before Plaintiff filed this suit.  It is therefore possible, depending on the circumstances, that tolling would also not render Plaintiff's EPA, FMLA, or ERISA claims timely.  *See also* Pl.'s Opp'n Mem. at 16 (seeming to concede that her FMLA and ERISA claims—as well as "some other" claims—are time barred and noting that these claims were added to her Complaint "only for illustrative purposes").

Equitable tolling would not save Plaintiff's LMRA claim, even if timely, since she is precluded from relitigating the issue of 1199's breach of its DFR.  *See supra* Section III.B.1.  Similarly, equitable tolling would not save Plaintiff's FLSA claim, since she is precluded from relitigating the issue of her unpaid wages.  *See supra* Section III.B.4.

because he was unaware of the statute of limitations, and because he received incorrect information from a third party concerning his remedies").

Plaintiff finally argues that the statute of limitations should be tolled due to Defendant's fraudulent concealment of certain facts.  Pl.'s Mem. at 3–5.  "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that:  (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled."  *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999) (internal quotation marks omitted).  Plaintiff alleges that:  Wyckoff and 1199 concealed from the arbitrator the fact that an ALJ had previously ruled in Plaintiff's favor with respect to her unemployment benefits, Pl.'s Mem. at 3; 1199 concealed from the arbitrator certain facts regarding Plaintiff's termination, *id.* at 4; 1199 concealed from Plaintiff certain facts regarding the legal ramifications of proceeding to arbitration, *id.*; and Wyckoff concealed from Plaintiff the fact that it allegedly "settled" with her attorney, Pl.'s Reply Mem. at 10.  The first three allegations fail to establish that *Defendant* concealed anything from *Plaintiff*.  And the fourth allegation, aside from being vague, has no bearing on Plaintiff's ability to discover the facts relevant to her claims in this action.  Accordingly, Plaintiff has failed to establish equitable tolling based on fraudulent concealment.

### D.  Plaintiff's Remaining Claims Have Not Been Adequately Plead.

#### 1.  Section 1981 Claim

Plaintiff alleged in her Complaint that while working for Defendant, she was subject to ongoing discrimination based on her "immigration status" (as a naturalized, as opposed to natural

born, American citizen) and "national origin" (Polish) in violation of 42 U.S.C. § 1981.  Compl. at 49–50, 52–53.  Plaintiff also claimed that she was subject to retaliation after complaining about such discrimination.  *Id.* at 51–52.  Defendant argues that Plaintiff's alleged bases for discrimination are not cognizable under Section 1981.  Def.'s Mem. at 10–11.

In her opposition brief, Plaintiff alleges for the first time that her Section 1981 claim against Defendant is actually one for *racial* discrimination,[20] premised on her being white and of Polish "ethnicity."  Pl.'s Opp'n Mem. at 8–15.[21]  Because these allegations were not included in the Complaint, the Court may not consider them in deciding Defendant's motion to dismiss. *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 500 (S.D.N.Y. 2015); *see also O'Brien v.*

---

[20] Plaintiff did allege racial discrimination in her Complaint, but only as to her union—not her employer.  Compl. at 50 ("Within 1199, the motivating factor was racial discrimination by well-established major minority.  At Wyckoff's pharmacy, I was discriminated by American born citizens based on my immigration status (citizenship) and national origin.").

[21] Plaintiff argues that Polish-Americans should be recognized as a distinct ethnic group warranting protection under Section 1981, just like Arab-Americans.  Pl.'s Opp'n Mem. at 11–14.  Although the Court need not decide the issue today, Plaintiff's argument is not as tenuous as Defendant contends.  The Supreme Court has stated:

> [A]ll those who might be deemed Caucasian today were not thought to be of the same race at the time § 1981 became law. . . . The debates are replete with references to the Scandinavian races, as well as the Chinese, Latin, Spanish, and Anglo-Saxon races.  Jews, Mexicans, blacks, and Mongolians were similarly categorized.  Gypsies were referred to as a race.  Likewise, the Germans . . . .  Based on the history of § 1981, we have little trouble in concluding that Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics.  Such discrimination is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory.  The Court of Appeals was thus quite right in holding that § 1981, "at a minimum," reaches discrimination against an individual "because he or she is genetically part of an ethnically and physiognomically distinctive sub-grouping of *homo sapiens*."  It is clear from our holding, however, that a distinctive physiognomy is not essential to qualify for § 1981 protection.  If respondent on remand can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981.

*Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 610–13 (1987); *see also Vill. of Freeport v. Barrella*, 814 F.3d 594, 605 n.25 (2d Cir. 2016) (indicating that a "white applicant whose ancestry is one-half Hispanic and one-half Irish . . . could, in principle, bring a race-discrimination suit if an employer refuses to hire him because he is Irish-American, and instead hires a white Italian-American").  *But see Doroz v. Columbia Place Assocs. LLC*, No. 13 Civ. 1135 (DNH), 2014 WL 5475289, at *4 (N.D.N.Y. Oct. 29, 2014) ("Plaintiff claims defendants discriminated against him because he is a native of Poland and speaks with an accent.  Such does not constitute discrimination based on race, ancestry, or particular ethnic characteristics.  Accordingly, the § 1981 claim will be dismissed.").

*Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").  The Court has, however, considered these allegations in determining whether to grant Plaintiff leave to replead this claim.

      Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Although the statute does not use the word "race," the Supreme Court has construed it to forbid "racial" discrimination, including discrimination based on "ancestry or ethnic characteristics," in public or private employment.  *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609, 613 (1987).  Unlike Title VII, Section 1981 does not reach discrimination on the basis of "national origin," *id.* at 613 (indicating that a claim based "solely on the place or nation of [one's] origin" is not cognizable under Section 1981); *see also Vill. of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016) ("Section 1981 prohibits discrimination on the basis of race but not on the basis of national origin."), though claims based on both race and national origin "may substantially overlap or even be indistinguishable depending on the specific facts of a case," *Vill. of Freeport*, 814 F.3d at 606 (quoting *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003)).  The Second Circuit has additionally held that Section 1981 proscribes discrimination on the basis of "alienage," *i.e.*, "citizenship," *Anderson v. Conboy*, 156 F.3d 167, 171, 173 (2d Cir. 1998) ("The use of 'persons' rather than 'citizens' was deliberate."); *accord Sagana v. Tenorio*, 384 F.3d 731, 737–38 (9th Cir. 2004), which "is distinct from both national-origin and birthplace discrimination," *Anderson*, 156 F.3d at 171 n.5.

Plaintiff's claim, as alleged in the Complaint, that she was discriminated against based on her national origin is not cognizable under Section 1981. *Vill. of Freeport*, 814 F.3d at 606; *see also Maslowski v. Crimson Constr. Corp.*, No. 11 Civ. 556 (VVP), 2013 WL 752199, at *3 (E.D.N.Y. Feb. 27, 2013) (dismissing with prejudice plaintiffs' Section 1981 claim asserting discrimination based on Polish national origin).

With respect to Plaintiff's claim that she was discriminated against because she is a naturalized citizen, the Court has not identified, and Plaintiff has not submitted, any precedent in this Circuit establishing that Section 1981's prohibition of alienage discrimination extends to naturalized U.S. citizens. *Cf. Juarez v. Northwestern Mutual Life Ins. Co., Inc.*, 69 F. Supp. 3d 364, 368–69 (S.D.N.Y. 2014) (holding that the protection of Section 1981 "extends to all lawfully present *aliens*, whether or not they have a green card") (emphasis added).

Even if Plaintiff's alienage claim were cognizable, however, Plaintiff has not properly alleged such a claim. In order to survive a motion to dismiss, Plaintiff's allegations "must provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).[22] Plaintiff alleges that some of her colleagues received preferential treatment, but she identifies the citizenship status of only two—Larry Coppola and Maria Esposito, both alleged to be natural born citizens. Compl. at 7. Compared to these two individuals, Plaintiff claims that she received less favorable shifts and assignments, *id.* at 7–8, and harsher punishments, *id.* at 10–11, 22–23.

---

[22] Although *Vega* and *Littlejohn* discussed pleading standards in the context of Title VII employment discrimination, they both relied on the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), which the Second Circuit has held to apply with equal force to any claim covered by the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), including claims under Section 1981. *Azkour v. Bowery Residents' Comm., Inc.*, No. 15-887, 2016 WL 1552367, at *2 n.1 (2d Cir. Apr. 18, 2016) (summary order) (citing *Williams*, 458 F.3d at 72).

Plaintiff does not identify the citizenship status of her supervisor, Director Rumore, or of any of her other colleagues who allegedly received favorable or, like her, less favorable treatment.  Nor does she allege any examples of discriminatory comments or innuendo related to her citizenship status.  On the facts as alleged, the Complaint does not plausibly give rise to an inference of discrimination.  *See Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 371 (S.D.N.Y. 2015) ("[W]hile Columbia may well have treated Jane Doe more favorably than Plaintiff during the disciplinary process, the mere fact that Plaintiff is male and Jane Doe is female does not suggest that the disparate treatment was *because of* Plaintiff's sex."), *appeal filed*, Nos. 15-1661, 15-1536 (2d Cir.); *cf. Ruiz v. City of New York*, No. 14 Civ. 5231 (VEC), 2015 WL 5146629, at *4 (S.D.N.Y. Sept. 2, 2015) (denying dismissal of a Hispanic plaintiff's racial discrimination claim where she alleged not only that she was punished more harshly than non-minority employees, but also that she was prohibited from speaking Spanish on the job "in a manner that could suggest racial animus").

Because it is not clear that granting Plaintiff leave to amend her Complaint would be futile with respect to her Section 1981 claim,[23] the claim is dismissed without prejudice.

### 2.  COBRA Claim

Plaintiff alleges that Defendant violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA") by terminating her health insurance without proper notification

---

[23] The parties agree that Plaintiff's Section 1981 claim is subject to a four-year statute of limitations, and that to the extent the claim is based on events occurring after May 22, 2011, the claim was timely filed.  Def.'s Mem. at 11–12; Pl.'s Opp'n Mem. at 15.  Plaintiff alleges that events occurring *before* May 22, 2011 may additionally serve as the basis of her claim under the "continuing violation doctrine."  Pl.'s Opp'n Mem. at 15–16; *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002) ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."), *superseded in part by statute*, Lilly Ledbetter Fair Pay Act, Pub. L. No. 111-2, 123 Stat. 5 (2009).  Given the Court's decision dismissing Plaintiff's Complaint, the Court need not decide whether the allegations as pleaded fit this theory.

and without giving her the opportunity to extend her insurance under group coverage.  Compl. at 58.  "While statutory damages are available for failure to comply with COBRA's notice provisions, they are available only against the actual plan administrator—not against an employer who is not the plan administrator."  *Gill v. ACACIA Network*, No. 13 Civ. 9088 (TPG), 2015 WL 1254774, at *4 (S.D.N.Y. Mar. 18, 2015) (citing 29 U.S.C. § 1132(c)(3)); *see also Capobianco v. Sandow Media Corp.*, Nos. 11 Civ. 3162 (LAP), 11 Civ. 3163 (LAP), 2012 WL 4561761, at *7 (S.D.N.Y. Sept. 29, 2012) (same).  Defendant did not administer Plaintiff's health insurance plan—her union did.  Compl., Ex. 4 at 76–79.  Accordingly, Plaintiff's COBRA claim is dismissed with prejudice.

### 3.  NLRA Claim

Plaintiff alleges that Defendant committed unfair labor practices by retaliating against her, in violation of the NLRA.  Compl. at 55–56.  The NLRA does not authorize such a private cause of action, however.  Instead, "unfair labor practices," as defined in Section 8 of the NLRA, "are peculiarly within the ambit of the National Labor Relations Board."  *In re Consol. Laundries Corp. v.* Craft, 185 F. Supp. 631, 635 (S.D.N.Y. 1960); *see also Woods v. Dist. Council for N.Y.C. & Vicinity of the United Bhd. of Carpenters & Joiners of Am.*, 14 Civ. 9057 (JPO), 2015 WL 3763916, at *5 (S.D.N.Y. June 16, 2015) ("[T]he States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.").[24]  Plaintiff's NLRA claim is thus dismissed with prejudice.

---

[24] The NLRB dismissed Plaintiff's charges against Wyckoff and 1199 and sustained the decisions on appeal. Compl. at 40–42 ¶¶ 17–22; Hoey Decl. Exs. M, N, O, P.  Plaintiff indicates that she intends to file a lawsuit against the NLRB.  Pl.'s Reply Mem. at 9.

### 4.  OSHA Claims

Plaintiff alleges that Defendant violated OSHA by failing to comply with safety standards and by firing her in retaliation for filing an OSHA complaint to that effect.  Compl. at 55, 59–61. As Plaintiff knows from her prior suit against 1199, however, there is no private right of action for employees to enforce OSHA.  *Von Maack v. 1199SEIU United Healthcare Workers E.*, 2014 WL 5801349, at *7 (citing *Donovan v. Occupational Safety & Health Review Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983)); *see also U.S. Envtl. Prot. Agency ex rel. McKeown v. Port Auth. of N.Y. & N.J.*, 162 F. Supp. 2d 173, 191 (S.D.N.Y.) ("The only provision in OSHA that permits a private citizen to bring a suit in federal court to enforce a standard is section 655(f), which allows '[a]ny person who may be adversely affected by a standard issued under this section . . . at any time prior to the sixtieth day after such standard is promulgated [to] file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard.'"), *aff'd sub nom. McKeown v. Del. Bridge Auth.*, 23 F. App'x 81 (2d Cir. 2001).  Plaintiff's OSHA claims are thus dismissed with prejudice.

### 5.  Pharmacy Regulation Claims

Finally, Plaintiff alleges that Defendant violated a number of federal and state regulations governing pharmacies, including 10 N.Y.C.R.R. § 405.17; N.Y. Educ. Law, Art. 137; 29 C.F.R. § 1910.1200; OSHA Directive CPL 02-02-054; and United States Pharmacopeia Chapter 797. Compl. at 59–61.  Yet, as in her prior suit against 1199, Plaintiff has not directed the Court to any provision creating a private right of action to enforce these regulations.  *Von Maack v. 1199SEIU United Healthcare Workers E.*, 2014 WL 5801349, at *7.  Plaintiff's claims predicated on these regulations are therefore dismissed with prejudice.

### E.  The Court Will Not Enjoin Plaintiff From Filing Future Suits Against Defendant Without Prior Permission.

Defendant requests that the Court enjoin Plaintiff from filing any further actions against it without prior permission from the Court.  Def.'s Mem. at 23–24.  "A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation."  *Abdullah v. Gatto*, 773 F.2d 487, 488 (2d Cir. 1985).  Therefore, the Second Circuit has held that "[t]he issuance of a filing injunction is appropriate when a plaintiff abuse[s] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings."  *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (internal quotation marks omitted).

In determining whether to restrict a litigant's future access to courts, courts should consider the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).  Ultimately, the question is "whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties."  *Id.*

In addition to the present lawsuit, Plaintiff has filed against Defendant:  a suit in New York State Court alleging a violation of New York Labor Law § 741; three suits in New York City Small Claims Court alleging unpaid wages; and two suits for workers' compensation, one alleging that the conditions of Defendant's pharmacy caused her to develop lung diseases and the other alleging that Defendant retaliated against her.  Plaintiff has also filed charges against Defendant with the NYSDHR, the EEOC, OSHA, and the NLRB.  Although these proceedings

have revolved around the same universe of facts, Plaintiff's claims in each action are not entirely duplicative.  Moreover, Plaintiff has not been acting entirely alone—certain of these actions were instituted with the assistance of an attorney.  Finally, although Plaintiff has not on the whole been successful, her claims in these actions cannot be said to have all been frivolous.  Indeed, not only is Plaintiff granted leave to replead certain of her claims in this action, but the Small Claims Court found in Plaintiff's favor on her unpaid wages claim and awarded her damages.

This case is plainly distinguishable from those cited by Defendant.  In *Iwachiw v. New York State Department of Motor Vehicles*, the plaintiff had filed more than fifteen actions in the federal and New York state courts; several of his appeals had been dismissed for frivolousness, failure to comply with the rules or orders of the Court, or lack of appellate jurisdiction; and the plaintiff had already been warned against filing future frivolous appeals.  396 F.3d 525, 528–29 (2d Cir. 2005).  In *Safir v. U.S. Lines Inc.*, the plaintiff spent twenty years litigating claims in an effort to "block and hinder various business transactions of the defendants."  792 F.2d at 24. And in *Golub v. Kidder Peabody & Co.*, the plaintiff's pattern of litigation "span[ned] two decades and earned him sanctions from both [the district court] and the Court of Appeals, including two orders by [the district court] precluding [him] from further filings."  No. 89 Civ. 5903 (WHP), 2010 WL 5422503, at *3 (S.D.N.Y. Dec. 16, 2010).

Although the Court appreciates that Defendant has now had to defend against Plaintiff's claims over a period of five years in various fora, the Court is not persuaded that Plaintiff is motivated by a desire to harass Defendant with frivolous or repetitive proceedings, but rather to vindicate her perceived rights.  The Court does not find, at this juncture, that Plaintiff has abused the judicial process or harassed Defendant in pursuit of that goal.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED[25] and Plaintiff's motion to vacate the arbitration award is DENIED. Plaintiff is granted leave to replead her EPA, FMLA, ERISA, and Section 1981 claims, including allegations supporting tolling the limitations periods for the first three of these claims. Plaintiff's Amended Complaint shall be filed, if at all, on or before July 21, 2016. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 10 and 14, and to mail a copy of this Opinion and Order to Plaintiff.

It is SO ORDERED.

Dated:     June 21, 2016
           New York, New York

Edgardo Ramos, U.S.D.J.

---

[25] Because none of Plaintiff's claims survive dismissal, the Court need not decide whether Plaintiff's Complaint should alternatively be dismissed for failure to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See* Def.'s Mem. at 21–23.